UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PAMELA CARTER

CIVIL ACTION

VERSUS

NO. 25-2273

QUINTAIROS, PRIETO, WOOD &
BOYER, P.A., ET AL.

SECTION "R" (4)

## ORDER AND REASONS

Defendant Quintairos, Prieto, Wood & Boyer, P.A. ("QPWB") moves to compel arbitration and stay the proceeding.[1] Plaintiff Pamela Carter opposes the motion.[2] For the following reasons, the Court denies the motion.

## I.  BACKGROUND

Pamela Carter brings this suit arising out of her employment with QPWB against QPWB, Debbie Riley, Eric Boyer, and Elisa Hernandez (collectively, "Defendants").[3] Plaintiff asserts eight claims against defendants: First, for violation of the Family and Medical Leave Act against QPWB; second, for wrongful termination/retaliation under La. R.S. § 23:323 against QPWB, Riley, and Boyer; third, for defamation against Riley and Boyer; fourth, for tortious interference with business relations against Riley

---

[1]    R. Doc. 16.
[2]    R. Doc. 23.
[3]    R. Doc. 1.

and Boyer; fifth, for breach of contract against QPWB and Hernandez; sixth for violation of the Americans with Disabilities Act ("ADA") against QPWB; seventh, for violation of the Louisiana Employment Discrimination Law ("LEDL") against QPWB, Riley, and Boyer; and eighth, for violation of the Louisiana Wage Payment Act against QPWB, Riley, and Boyer.[4]

QPWB now moves to compel arbitration and stay litigation.[5]  QPWB argues that a binding arbitration agreement exists, and that plaintiff's claims against it are within the scope of the arbitration agreement.[6]   Plaintiff opposes the motion.[7]

The Court considers the motion below.

## II.    LEGAL STANDARD

To determine whether to compel arbitration, the Court conducts a "two-step inquiry." *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007).  "Th[e] Court must first ascertain whether the parties agreed to arbitrate the dispute," which requires determining "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration

---

[4]      *See id.*
[5]      R. Doc. 16.
[6]      *See id.*
[7]      R. Doc. 23.

agreement." *Id.* (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)).  The second step requires the court to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb v. Investcorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (internal quotation omitted).

The initial inquiry "is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 584 U.S. 1031 (2018).  Courts "apply ordinary state-law principles that govern the formation of contracts" in making this determination.  *Webb*, 89 F.3d at 258 (internal quotation omitted).  Although there is a strong federal policy favoring arbitration, *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011), the policy "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.  *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 516 n.5 (5th Cir. 2019) (quoting *Will-Drill Res.*, 352 F.3d at 214).  Parties are not required to arbitrate when they have not agreed to do so.  *Volt Info. Scis., Inc. v. Bd. of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985)).  Arbitration is a matter of contract and the Federal Arbitration Act "requires courts to enforce privately negotiated

3

agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478 (citing *Prima Paint Corp v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

If the Court finds that there is a valid arbitration agreement, it proceeds to ask whether the claim at issue is covered by the arbitration agreement. *IQ Prod.*, 871 F.3d at 348. The Court must be mindful of the "federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt*, 489 U.S. at 475-76; *see also Grigson v. Creative Artists Agency*, 210 F.3d 524, 526 (5th Cir. 2001).

At the second step, the Court determines "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb*, 89 F.3d at 258 (internal quotation omitted).

The party seeking to compel arbitration must prove the existence of an arbitration agreement by a preponderance of the evidence. *Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005) (per curiam). If a valid arbitration agreement exists, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## III.   DISCUSSION

QPWB contends there is a valid arbitration agreement based on its QPWB Employment Policy Manual, and an Acknowledgement and Release Form signed by plaintiff.[8]  The Acknowledgement & Release form includes the following statement regarding the Employment Policy Manual:

> I acknowledge that the Quintairos, Prieto, Wood & Boyer, P.A.'s ("QPWB") Employment Policy Manual can be accessed on-line through the ADP employee portal at https://portal.adp.com following my first day of employment.  Instructions on how to access ADP have been provided via email. . . .
>
> The policy manual is not a legal document and is not intended to create, express or imply a contract between QPWB and any or all of its employees.  It is my responsibility to read and comply with the policy manual and the provisions regarding the intent and its purpose.  QPWB may revise, supplement or rescind policies, procedures or benefits described in the manual.  If I have questions regarding QPWB's policies, I will contact Human Resources or the Managing Partner.  I further acknowledge my status as an at-will employee of QPWB and understand that either I or QPWB may terminate my employment with or without notice or cause.[9]

Section 2.11 of the Employment Policy Manual contains the following statement about the arbitration policy:

> Employment controversies between QPWB and any of its employees will be decided by arbitration.  The arbitration process shall be commenced and proceed in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association.  The decision of the arbitrator will be

---

[8]     *See* R. Doc. 16.

[9]     R. Doc. 16-2 at 5.

final and binding. The arbitration process offers several mutual advantages to QPWB and its employees. Specifically, the arbitration process makes it possible to resolve controversies more quickly and at less cost than court proceedings.[10]

The question before the Court is whether these recitals amount to a valid contract to arbitrate.

Under Louisiana law, a valid contract requires: (1) capacity to contract; (2) mutual consent; (3) a certain object; and (4) lawful purpose. La. Civ. Code arts. 1918, 1927, 1966, and 1971; *see also Granger v. Christus Health Cent. La.*, 144 So. 3d 736, 760-61 (La. 2013). Courts in Louisiana have overwhelmingly rejected employee handbooks and manuals as the source of contractual obligations. *Wallace v. Shreve Memorial Library*, 79 F.3d 427, 431 (5th Cir. 1996); *see also Gilbert v. Tulane Univ.*, 909 F.2d 124, 126-27 (5th Cir. 1990); *Walker v. Air Liquide America Corp.*, 113 F. Supp. 2d 983, 985 (M.D. La. 2000); *Adams v. Autozoners, Inc.*, 1999 WL 744039, at *5-6 (E.D. La. Sept. 23, 1999). They reason that such handbooks and manuals are mere "unilateral expression[s] of company policy and procedures." *Walker*, 113 F. Supp. 2d at 985 (citing *Mix v. University of New Orleans*, 609 So. 2d 958, 961 (La. App. 4 Cir. 1992); *Malakoff v. Alton Ochsner Medical Foundation*, 2000 WL 805232 (E.D. La. Jun. 20, 2000); *Schwarz v.*

---

[10]    *Id.* at 12.

*Administrators of Tulane Educ. Fund*, 699 So. 2d 895 (La. App. 4 Cir. 1997); *Leger v. Tyson Foods, Inc.*, 670 So. 2d 397 (La. App. 3 Cir. 1996); *Keller v. Sisters of Charity*, 597 So. 2d 1113, 1115 (La. App. 2 Cir. 1992); *Wall v. Tulane Univ.*, 499 So. 2d 375, 376 (La. App. 4 Cir. 1986)). "This is especially true when . . . the policy manual contains an express disclaimer that the manual does not constitute a contract." *Walker*, 113 F. Supp. 2d at 985.

Here the policy manual itself states that "[o]bviously, [the manual] is intended to be a guide," it "does not give rise to any contractual rights," nothing within it "shall limit the firm's ability to respond to unique circumstances with unique solutions," and it "is not intended to serve as a limitation on the management of the firm to take any legal action it considers appropriate."[11]  The Acknowledgment & Release Form signed by plaintiff reflects the same, stating:

> The policy manual is *not a legal document and is not intended to create, express or imply a contract* between QPWB and any or all of its employees.  It is my responsibility to read and comply with the policy manual and the provisions regarding the intent and its purpose.  QPWB may revise, supplement or rescind policies, procedures or benefits described in the Manual.[12]

---

[11]     *Id*. at 10-11. (emphasis added).
[12]     R. Doc. 16-2 at 5-6.

7

Taken together, it is clear the Employment Policy Manual is a "unilateral expression of company policy and procedures." *Walker*, 113 F. Supp. 2d at 985 (internal citations omitted). It is not a binding contract.

Moreover, irrespective of whether the Employment Policy Manual constituted a contract, Carter's signing of the Acknowledgment & Release form does not constitute consent to be bound by the arbitration clause within it. The Acknowledgement & Release Form states:

> I acknowledge that the [QWPB] Employment Policy Manual can be accessed on-line through the ADP employee portal . . . following my first day of employment. . . .[13]

It makes no mention of the arbitration agreement within the Employment Policy Manual. There is no indication that plaintiff agreed to submit any potential employment controversy to arbitration by virtue of her acknowledging that she would be able to access the handbook "on-line through the ADP employee portal . . . following [her] first day of employment."[14] *See id.* at 986 ("There is no indication under the facts of this case that [plaintiff] agreed to submit any employment dispute he might have to binding arbitration by virtue of his acknowledgment that he received and read the handbook."); *see also Little v. Tech. Specialty Prods.*, LLC, 2012 WL

---

[13]   R. Doc. 16-2 at 5-6.
[14]   R. Doc. 16-2 at 5.

695719, at *5 (following *Walker* in finding that acknowledgement of receipt of a manual was insufficient to bind the parties to arbitration); *cf. Jones v. Tenet Health Network, Inc.*, 1997 WL 180384 (E.D. La. Apr. 7, 1997) (finding that an "Acknowledgment Form" which contained "an express agreement to arbitrate as 'a condition of employment and continued employment'" was itself "separate and distinct from the employee manual" and constituted a binding arbitration agreement).

Accordingly, finding that there is no valid agreement to arbitrate, the Court must deny defendant QPWB's motion to compel arbitration and stay the proceeding.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES defendant QPWB's motion to compel arbitration and stay the proceeding.

New Orleans, Louisiana, this __21st__ day of April, 2026.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

9